# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

KERON D. SIMPSON,

        Petitioner,     :    Case No. 3:17-cv-299

  - vs -                       District Judge Thomas M. Rose
                              Magistrate Judge Michael R. Merz

WARDEN,
  Lebanon Correctional Institution,

                              :

        Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Counsel who had represented Simpson in post-conviction filed the Petition on his behalf on August 29, 2017 (ECF No. 1) and an Amended Petition on August 31, 2017 (ECF No. 2). The Court then appointed replacement counsel (ECF No. 4) and ordered the State to file the State Court Record (ECF No. 12) and a Return of Writ (ECF No. 13). The case became ripe on the filing of Petitioner's Reply (ECF No. 17).

**Procedural History**

Simpson seeks relief from his April 2012 convictions in Case No. 2010 CR 4101 in the Montgomery County Common Pleas Court for the theft of two motor vehicles, felonious assault, aggravated robbery, and a firearm specification (State Court Record, ECF No. 12, Ex. 9). Simpson appealed to the Second District Court of Appeals which affirmed. *State v. Simpson*,

1

2013-Ohio-1696, 2013 Ohio App. LEXIS 1585 (2nd Dist. Apr. 26, 2013)("*Simpson Direct*"). Simpson did not appeal further to the Ohio Supreme Court.

However, he did file a petition form post-conviction relief under Ohio Revised Code § 2953.21 which the trial court dismissed on the State's motion for summary judgment. Simpson appealed to the Second District which affirmed. *State v. Simpson*, 2016-Ohio-1268, 61 N.E. 3d 894, 2016 Ohio App. LEXIS 1338 (2nd Dist. Mar. 25, 2016), appellate review declined, 146 Ohio St. 3d 1490 (2016)("*Simpson PC*").

Simpson pleads two grounds for relief:

> **Ground One:** Petitioner's right to counsel guaranteed by the Sixth Amendment was violated at trial.
>
> > **Sub-claim A:** Trial Counsel failed to investigate and secure an expert evaluation of Petitioner's mental health status.
> >
> > **Sub-claim B:** Trial counsel failed to investigate and obtain expert assistance on eyewitness identification and witness perception.
>
> **Ground Two:** Petitioner's right to a fair trial was violated by the admission of an unfair eye witness identification [procedure was violated].

(Corrected Petition, ECF No. 2, PageID 30-31.)

# Analysis

**Ground One: Ineffective Assistance of Trial Counsel**

   **Sub-claim A: Mental Health Status**

   In his first ineffective assistance of trial counsel sub-claim, Simpson asserts his trial attorney provided ineffective assistance of trial counsel when he failed to investigate Simpson's mental health status and to hire an expert to evaluate that status.

   Respondent argues this sub-claim is barred by Simpson's procedural default in presenting it to the Ohio courts (Return, ECF No. 13, PageID 1757-60).

   The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord, Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Simpson raised this claim in post-conviction at both the trial and appellate levels. The Second District decided the claim as follows:

> [*P5] In his first assignment of error, Simpson contends the trial court erred in rejecting his post-conviction claim for relief based on trial counsel's failure to have an expert review his mental status. Simpson asserts that he has an intellectual disability, namely "mental retardation," that his trial counsel failed to recognize this disability or to make any "adjustment" for it, and that counsel should have retained a mental-health expert to evaluate him. He

argues that counsel's failure to do so constituted ineffective assistance. In support of his post-conviction claim about the need for an evaluation of his mental status, Simpson provided the trial court with his Dayton Public School records and Social Security Administration records. Those records show that he received low grades in school, that he participated in a special-education program, that he had a full-scale I.Q. of 53, and that he was classified as "mildly mentally retarded."

[*P6] The trial court rejected Simpson's claim for post-conviction relief based on counsel's failure to have an expert review his mental status. In support of its decision, the trial court reasoned:

> Keron Simpson in support of his contention, has filed school and medical records relating to his social security disability claim. Mr. Simpson, however, has not provided any evidence concerning what [defense counsel Jeffrey] Gramza may have known about Mr. Simpson's mental status. Mr. Simpson, it seems, is not contending he was not competent to stand trial. Mr. Simpson, instead, asserts his low IQ affected his ability to knowingly and voluntarily waive his *Miranda* rights, to assist counsel, and to make required trial decisions, such as whether he should testify. The court, quite frankly, has great difficulty with the suggested distinction. The issues of a knowing and voluntary *Miranda* waiver, trial assistance, and trial decision making relate to competence, yet Mr. Simpson does not suggest such incompetence.
>
> The court, in any event, has carefully reviewed the submitted documents. The documents do not demonstrate that Mr. Simpson's level of mental functioning affected his ability to understand and in a knowing and voluntary fashion waive his *Miranda* rights, to provide assistance to Mr. Gramza, or to make any decisions he had to make regarding the trial's conduction. Mr. Simpson, other than filing the documents, has presented no evidence that Mr. Simpson's mental status affected him as suggested. Mr. Simpson's contention is compromised, if not dispelled, by Mr. Simpson's video [captured] conduct and demeanor during video recorded interviews. Mr. Simpson, despite his suggestion to the contrary, was engaged and alert during the interviews. The interviews reveal no cause for concern regarding Mr. Simpson's mental status.

5

> Mr. Simpson, going first to the issue of ineffective assistance, has produced no evidence that Mr. Gramza knew or should have known about Mr. Simpson's low IQ. Further, there is nothing in the record to suggest how Mr. Gramza would have been alerted to this issue. The court, based upon the presented record, cannot conclude that Mr. Gramza's failure to have Mr. Simpson's mental status evaluated constituted ineffective assistance. Mr. Simpson, additionally, has failed to present evidence demonstrating how a mental status evaluation would have affected the trial's outcome.
>
> Mr. Simpson, in short, has failed in his initial burden to demonstrate substantial grounds for the conclusion that Mr. Gramza provided ineffective assistance by failing to have Mr. Simpson's mental status evaluated or that such an examination would have changed the trial's outcome. It is, therefore, appropriate to dismiss this contention without a hearing through summary judgment.

(Doc. #44 at 5-6).

[\*P7] On appeal, Simpson reiterates his claim that his mental status affected his ability to waive his *Miranda* rights as well as decisions such as whether to go to trial or whether to testify and his ability to assist trial counsel in presenting a defense. Therefore, he argues that his trial counsel should have investigated his mental status and retained an expert to evaluate that status. In connection with his argument, Simpson also asserts that developmental disability or "mental retardation," which he purportedly suffers from, cannot be detected though observation by a lay person.

[\*P8] Having reviewed Simpson's argument and his evidentiary materials, we see no error in the trial court's rejection of his claim without an evidentiary hearing. As a preliminary matter, Simpson does not challenge the trial court's finding that his demeanor and conduct during recorded interviews gave no outward indication that his mental status was impaired. Moreover, we note that Simpson supported his post-conviction relief petition with an affidavit that he had filed in another case. That affidavit failed to allege that defense counsel in this case, Jeffrey Gramza, knew that Simpson had a learning disability or that he was "mentally retarded." Based on our review of the record, we see nothing that reasonably should have alerted defense counsel of a need to have Simpson's mental status evaluated. Therefore, counsel's failure to do so could not have constituted ineffective assistance.

> [*P9] In any event, we also agree with the trial court that the post-conviction evidence of Simpson's low I.Q. and "mild mental retardation" fails to raise an issue as to his ability to assist trial counsel in making strategic decisions. The trial court found that Simpson was not claiming to be incompetent to stand trial, and Simpson has not challenged that finding on appeal. But if Simpson does not claim his mental status rendered him legally incompetent, we fail to see the significance of, or the need for, trial counsel to have an expert evaluate his mental status. By definition, if Simpson was legally competent to stand trial, then he was sufficiently able to assist his attorney in making strategic decisions. We are unaware of any authority that would have imposed on Simpson's attorney an obligation to seek an expert opinion on his "mental status" under the circumstances before us. Moreover, we agree with the trial court that the evidentiary materials accompanying Simpson's petition—Dayton Public School and Social Security Administration records—did not provide a substantial basis for concluding that Simpson's mental status compromised his ability to knowingly and voluntarily waive his *Miranda* rights, to assist defense counsel, or to be involved in trial decisions. Finally, we have no way of knowing what result a mental-status evaluation would have produced or what conclusion a mental-health expert retained by Simpson's trial counsel would have reached. Simpson has provided no such expert opinion. Therefore, he also cannot establish that he was prejudiced by his attorney's failure to obtain a mental-status evaluation. The first assignment of error is overruled.

*Simpson PC*, 2016-Ohio-1268 at ¶¶ 5-8.

Thus both the trial court and the Second District reached the merits of this sub-claim and disposed of it on that basis. Respondent is correct that Ohio's criminal res judicata rule requires that claims of ineffective assistance of trial counsel which can be raised on direct appeal be raised in that manner or be barred from consideration at later stages of the case. But neither the trial court nor the Second District enforced that rule against Simpson here, concluding that there was not sufficient evidence available on direct review. The Warden's procedural default defense should be overruled.

The Warden's argument (Return, ECF No. 13, PageID 1758) that this sub-claim was not fairly presented to the state courts because Simpson raised it as a trial court error claim is also

not well taken. As the Second District noted, the first assignment of error was failure to grant relief on the basis of the constitutional claim of ineffective assistance of trial counsel. This assignment was argued in the Second District in terms of the Sixth Amendment right to effective assistance of counsel; the first sentence of argument cites the relevant Supreme Court case, *Strickland v. Washington*, 466 U.S. 668 (1984)(Merit Brief of Appellant, State Court Record, ECF No. 12, PageID 443).

In sum, the Second District reached the merits of this constitutional claim which therefore preserves it for merits review in this Court.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The standard for evaluating a claim of ineffective assistance of trial counsel is well known and was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

8

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218. Without expressly citing *Strickland* or Ohio case law adopting the same standard, the Second District applied the *Strickland* standard in concluding that Simpson did not suffer ineffective assistance of trial counsel in the ways he claimed, because he had not demonstrated deficient performance or resulting prejudice.

In his Reply, Simpson claims he was incompetent to stand trial, but this claim is inconsistent with the findings of both the trial court and the Second District that Simpson did not

claim to be incompetent to stand trial or to do those things in defending himself which would have been inconsistent with incompetency. Indeed the Reply points to nothing in the record which would have alerted trial counsel to any likely incompetency. In particular, there is no allegation that the evidence of intellectual disability presented in post-conviction was ever brought to trial counsel's attention. As the Second District noted, "Simpson [did] not challenge the trial court's finding that his demeanor and conduct during recorded interviews gave no outward indication that his mental status was impaired." *Simpson PC,* 2016-Ohio-1268, at ¶ 9.

Both the trial court and the Second District analyzed this sub-claim under both prongs of *Strickland* – deficient performance and prejudice – and denied the claim on its merits. That decision was not an objectively unreasonable application of *Strickland*, *supra*, and thus is entitled to deference under 28 U.S.C. § 2254(d)(1).

**Sub-claim B: Eyewitness Identification and Witness Perception**

In his second sub-claim of ineffective assistance of trial counsel, Simpson asserts his trial counsel failed to seek a witness who could have given expert testimony on the weaknesses of eyewitness identification testimony and witness perception generally.

Respondent's procedural default defense to this sub-claim is without merit for the same reasons given above as to sub-claim A. The Second District reached this claim on the merits and held:

> [*P10] In his second assignment of error, Simpson claims the trial court erred in rejecting a post-conviction claim for relief based on his trial counsel's failure to obtain an expert on eyewitness identification. It is unclear from Simpson's brief whether he believes such an expert should have been used at trial, in conjunction with his failed pretrial motion to suppress several

> photo-spread identifications, or both. Either way, we reject
> Simpson's argument. We do not know what such an expert would
> have concluded, or whether the expert would have aided Simpson's
> defense, because his petition for post-conviction relief is devoid of
> any evidence outside the record from such an expert. Therefore,
> Simpson cannot establish ineffective assistance based on trial
> counsel's failure to secure an eyewitness-identification expert.
> Accordingly, the second assignment of error is overruled.

*Simpson PC*, 2016-Ohio-1268 at ¶ 10..

In other words, the Second District concluded that, in the absence of any evidence about what such a witness would have testified to, it was neither deficient performance nor prejudicial for trial counsel to fail to employ an expert witness on eyewitness identification or witness perception generally. Simpson points to nothing in the record which would support a contrary conclusion. The fact that Respondent did not expressly point this out in an extensive Return of Writ is not good cause to treat the point as forfeited. Compare *Reeves v. Campbell*, 708 Fed. Appx. 230 (6th Cir. 2017) cited by Petitioner at Reply, ECF No. 17, PageID 1979.

The Second District's decision on this sub-claim is not an objectively unreasonable application of *Strickland* and is therefore entitled to deference under 28 U.S.C. § 2254(d)(1).

**Ground Two: Conviction on an Unreliable Eyewitness Identification**

In his Second Ground for Relief, Simpson claims he was denied his right to a fair trial when he was convicted in part on the basis of an unreliable eyewitness identification. Simpson raised this claim in the trial court by motion to suppress. When that was unsuccessful, he again raised it on direct appeal as his first assignment of error and the Second District decided it on the merits. *Simpson Direct*, 2013-Ohio-1696 at ¶¶ 9-18. However, Simpson did not attempt to take a further direct appeal to the Ohio Supreme Court and thus procedurally defaulted this claim.

Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). Simpson offers no excuse for this procedural default.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 12, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).